NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
:
JOHN HALM,                          :
             Plaintiff,          :       Civil Action No. 11-644 (FLW)
:
      v.                          :
:            OPINION
MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
:
           Defendant.              :
_____ :

**WOLFSON, United States District Judge:**

    John Halm ("Plaintiff") appeals the final decision of the Commissioner of Social Security

("Commissioner") denying him disability benefits under the Social Security Act ("Act"). The

Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that

the record, when considered in full, substantiates his claims and requires a conclusion that he is

entitled to disability insurance benefits under the Act. Specifically, Plaintiff maintains that the

Administrative Law Judge (the "ALJ") erred by: (1) failing to provide an evidentiary foundation

for his determination regarding Plaintiff's Residual Functional Capacity ("RFC"); and (2) relying

solely on the medical-vocational grids to determine that there was work in the national economy

that Plaintiff could perform. After reviewing the administrative record, this Court finds that the

ALJ's decision is based on the substantial evidentiary support required by 42 U.S.C. § 405(g)

and, therefore, the ALJ's decision is affirmed in its entirety.

1

1.     **OVERVIEW**

A.     Procedural History

    Plaintiff filed an application for Disability Insurance Benefits on August 10, 2006,

alleging disability between February 2, 2006 and April 1, 2007, due to human immunodeficiency

virus ("HIV") infection, high blood pressure and an affective disorder.  Tr. 11, 13.   The claim

was denied initially and upon reconsideration.  Id. at 11.  On July 3, 2007, Plaintiff filed a written

request for a hearing.  A hearing was held on September 29, 2008 before an Administrative Law

Judge ("ALJ").  On October 27, 2008, the ALJ issued a decision finding that Plaintiff was not

disabled. The Appeals Counsel denied Plaintiff's request for review on November 30, 2010.

Administrative Transcript ("Tr.") 1.  Thereafter, in February 2011, Plaintiff filed the instant

appeal.


B.      Background

    Plaintiff was born on December 18, 1959.  Administrative Transcript ("Tr.") 17.  Plaintiff

has at least a high school education and communicates in English.  Id. For many years prior to

February 2, 2006, and again, after April 1, 2007, Plaintiff was employed by a union as an

inspector of shipping containers.  Tr. 24, 36, 94.  Plaintiff stopped working on or around

February 2, 2006 because he was "stressed out," felt like he "was having a breakdown" and

"needed rest."  Tr. 28.  Plaintiff remained out of work until April 1, 2007, at which point he

returned to his former job.


C.     Plaintiff's Impairments

Plaintiff was diagnosed with HIV in 1989.  Tr. 30.  By the time of the hearing in 2008, however, almost 20 years after his diagnosis, Plaintiff's viral load was almost "undetectable." Tr. 27.  However, at the hearing, Plaintiff testified that he was suffering from a combination of impairments due to the residuals of HIV, elevated blood pressure and depression, which did not allow him to function for a period of time.  Tr. 21.

Specifically, an April 1, 2006 report from Dr. Martin Mayer indicates that Plaintiff had been diagnosed with an adjustment disorder and complained of anxiety, impaired cognition and somatic preoccupation.  However, Dr. Mayer also reported that Plaintiff was bright and euthymic.  Tr. 129-134.  Indeed, despite Plaintiff's reported symptoms, Plaintiff's mental status examination was normal.  Id.  Plaintiff was not taking any medications for his alleged mental impairments and, in fact, Dr. Mayer noted that Plaintiff denied a need for medications relating to his alleged mental impairments.  Moreover, the report noted that Plaintiff had no limitations in understanding and memory, sustained concentration and persistence, social interaction or adaption.  Id.  Indeed, the repot noted that "psychologically, [Plaintiff] appears able to work."  Tr. 133.  The report also  noted that Plaintiff lived independently, had a large social circle and traveled to Florida frequently without difficulty.  Moreover, the report found that Plaintiff managed his financial and personal responsibilities on his own and was able to drive without difficulty.

On July 5, 2006, Plaintiff presented to the Emergency Room at Raritan Bay Medical Center with chest and back pain.  Tr. 135.  He was reported to be in no acute distress.  Tr. 139. A report from the physician on duty demonstrated that while "the exact cause of [Plaintiff's] chest pain isn't clear . . . there was no evidence of a dangerous medical condition."  Tr. 147.

Upon discharge, Plaintiff was advised to rest and eat lightly until the pain subsided.  Moreover,

the report noted that "we may prescribe medicine for pain and inflammation" and suggested that

Plaintiff follow up with his primary care physician within two to three days.  Id.

On September 5, 2006, Plaintiff's treating physician, Dr. David Lintz, reported that he

had been treating Plaintiff for HIV and hypertension and that he had last seen Plaintiff on August

31, 2006.  Tr. 148.  Dr. Lintz also reported that Plaintiff had been exposed to a silicone sealant at

work in May 2002, and that, subsequently, Plaintiff complained of headaches, difficulty

concentrating, general weakness, shortness of breath and being off balance.  Plaintiff went out of

work in 2002 as a result of the exposure, and returned to work shortly thereafter.  Dr. Lintz noted

that Plaintiff saw three pulmonary specialists for his shortness of breath and was treated with

steroids, Advair and albuterol.  In January 2006, plaintiff underwent pulmonary function testing

which revealed a mild degree of small airway obstruction that was reversed with inhaled

bronchodilators. Moreover, Dr. Lintz noted that Plaintiff had been concerned about his heart and

had seen several cardiologists, however, echocardiograms on Plaintiff's heart resulted in

"equivocal readings." Tr. 148.  During Plaintiff's last visit with Dr. Lintz on August 31, 2006,

Plaintiff complained of headache, chest and back pain, shortness of breath and diarrhea and

reported that he was still feeling forgetful.  However, upon examination, Dr. Lintz reported that

Plaintiff looked fair and that his heart revealed a regular rhythm.  Plaintiff's lungs were clear and

there was no tenderness in his abdomen or back.  Moreover, Plaintiff did not have any

opportunistic infections as a result of his HIV and was not having fever, night sweats or weight

loss. Tr. 149.  In summary, Dr. Lintz reported that Plaintiff suggests he is unable to work

because of fatigue, headache, difficulty concentrating, shortness of breath and back and chest

4

pain and that he is also depressed.  However, Dr. Lintz opined that Plaintiff was unable to work because of his complaints relating to his exposure to silicone sealant in 2002.  Tr. 149.

On October 13, 2006, Dr. Pradip Gupta performed a psychiatric evaluation at the request of the New Jersey Department of Labor.  Tr. 152-154. Dr. Gupta noted that Plaintiff had been complaining of generalized anxiety disorder, fluctuating memory problems and depression and that he was treated with Lexapro for anxiety disorder.  Tr. 152.   However, Dr. Gupta reported that Plaintiff denied any history of suicidal attempts or suicidal thinking.  Id.  Moreover, Dr. Gupta noted that Plaintiff had no history of mood swings or manic episodes.  Id.  Upon a mental status evaluation, Dr. Gupta found Plaintiff to be alert and cooperative.  Tr. 153.  Moreover, Dr. Gupta found that Plaintiff was coherent and could carry on a converstaion in a logical fashion. Id.  However, Dr. Gupta did note that Plaintiff appeared to be in a depressed and dejected mood and found that Plaintiff had a generalized anxiety disorder and "chronic depression reaction."  Id.

A psychiatric evaluation of Plaintiff on October 24, 2006 by Sharon Flaherty of the New Jersey Disability Determination Services, incorporated Dr. Gupta's reports, and found only mild limitations in Plaintiff's activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace.  Tr. 167.  Indeed, Dr. Flaherty performed a mental residual functional capacity which concluded that Plaintiff was not significantly limited in fourteen out of twenty areas including the ability to understand, remember and carry out short and simple instructions, the ability to sustain an ordinary routine without special supervision and the ability to work in coordination with others.  Further, the assessment only found that Plaintiff was moderately limited in six of twenty areas including the ability to carry out detailed instructions, to maintain attention for extended periods and the ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms.  Importantly, the assessment did not find that Plaintiff was markedly limited in any areas.  As a result, the report noted that plaintiff had a normal thought process and speech, was able to communicate and found that Plaintiff retained the mental ability to understand, remember and follow instructions and complete tasks.  Id. at 171.  Indeed, Dr. Flaherty noted that Plaintiff did well in the cognitive tests and focused well during the interview.  Id.

A November 2006 Physical Residual Functional Capacity Assessment of Plaintiff found that Plaintiff retained the capacity to do light work. Specifically, Dr. Schneider found that while Plaintiff "alleges a plethora of symptoms from inhaling possible toxic agents at work," an exhaustive evaluation from Plaintiff's treating physician "failed to discern any major abnormalities."  Tr. 173.  Indeed, Dr. Schneider noted that the severity and duration of Plaintiff's symptoms were "not proportionate to the expected . . ."  Tr. 177.

An April 27, 2007 report from treating physician Dr. Larry Cohen indicated that he first examined Plaintiff on May 22, 2006 and that his most recent examination was on February 28, 2007.  In that regard, Dr. Cohen noted that while Plaintiff had a history of hypertension, his current blood pressure was at 138/80 and that he was taking Diovan for his hypertension. Moreover, Dr. Cohen noted that Plaintiff's prognosis was "good." Id. at 185.

A letter from Dr. Philip Klein dated May 3, 2007, noted that Plaintiff had been treated on November 9, 2006 for assistance in the management of hypertension in the setting of HIV.  Tr. 201. Dr. Klein's evaluation noted no secondary causes of hypertension and indicated that after adjusting his hypertension medications, a follow up examination on January 18, 2007 revealed

that Plaintiff's blood pressure was "adequately controlled" and that Plaintiff "was discharged from further nephrologic care at that time." Id. 201.

D.      Testimonial Record

Plaintiff appeared at a hearing before the ALJ on September 29, 2008.  Plaintiff testified that he left his job on February 2, 2006 because he was concerned about his health, "was very stressed out," "was very forgetful" and "felt like I was having a breakdown and I told my doctor. . . I needed rest. I was tired." Tr. 27-28.   That said, Plaintiff also testified that his HIV was under control and entirely "undetectable." Tr. 27.  Plaintiff further testified that his blood pressure was controlled by early 2007.  Tr. 31.

In addition, with regard to Plaintiff's psychiatric treatment, Plaintiff testified that he saw a psychiatrist once and that she prescribed him tranquilizers which he did not want to take.  As a result, he did not follow up with her.  Plaintiff further testified that he talked to a psychologist in Avenel for a few weeks, Tr. 33, and that he "worked it all out." Id.

Moreover, in response to questions from counsel regarding how Plaintiff was able to regain function and return to his former job,  Plaintiff testified that he "took it easy. I got help from family and friends and I, I needed, I needed to rest and just get . . . my head together, because I don't know what was wrong. Everything was out of whack." Id. 33.  In that regard, Plaintiff testified that during the time period in which he alleges he was disabled, he "basically [stayed at] home." Id. 34.

E.      The ALJ's Decision

7

The ALJ began by finding that Plaintiff met the insured status requirement of the Social Security Act through Dec. 31, 2010. AR 13. The ALJ went on to apply the five-step process to determine Plaintiff's disability status between February 2, 2006 and April 1, 2007. Id. At Step One, the ALJ determined that Plaintiff did not engage in substantial gainful activity between February 2, 2006 and April 1, 2007. Id. At Step Two, the ALJ determined that Plaintiff had the following severe impairments during the relevant period: HIV infection, high blood pressure and an affective disorder. Id.

However, at Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the SSA that would automatically find Plaintiff disabled. Id. In that regard, the ALJ noted that specific consideration was given to listing 14.08 for HIV which requires one of various conditions including infections, neoplasms, conditions of the skin or mucous membranes, hematologic or neurological abnormalities or HIV wasting syndrome resulting in "restriction of activities of daily living, difficulties in maintaining social functioning or difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace." Tr. 14. However, the ALJ found that the evidence did not establish this level of infection.

Similarly, the ALJ also gave specific consideration to listing 12.04 for Affective Disorders; however, the ALJ again noted that the record did not establish the "requisite restriction of activities of daily living" required to qualify under that listing.[1] Finally, the ALJ

---

[1]Specifically, Listing 12.04 provides that an Affective Disorder is: characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the

noted that Plaintiff's hypertension was considered with regard to Plaintiff's HIV, but that the

hypertension did "not elevate the impairment to listing level severity."  Tr. 14.

 As a result, at Step Four, the ALJ determined that Plaintiff retained the Residual

Functional Capacity ("RFC") to perform medium work, except that Plaintiff could perform only

---

requirements in both A and B are satisfied, or when the requirements in C
are satisfied.
A. Medically documented persistence, either continuous or intermittent, of
one of the following:
1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or  b.
Appetite disturbance with change in weight; or c. Sleep disturbance; or d.
Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings
of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h.
Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following: a.
Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated
self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g.
Involvement in activities that have a high probability of painful
consequences which are not recognized; or h. Hallucinations, delusions or
paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the
full symptomatic picture of both manic and depressive syndromes (and
currently characterized by either or both syndromes); AND B. Resulting in
at least two of the following: 1. Marked restriction of activities of daily
living; or 2. Marked difficulties in maintaining social functioning; or 3.
Marked difficulties in maintaining concentration, persistence, or pace; or 4.
Repeated episodes of decompensation, each of extended duration; OR  C.
Medically documented history of a chronic affective disorder of at least 2
years' duration that has caused more than a minimal limitation of ability to
do basic work activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the following: 1. Repeated
episodes of decompensation, each of extended duration; or 2. A residual
disease process that has resulted in such marginal adjustment that even a
minimal increase in mental demands or change in the environment would be
predicted to cause the individual to decompensate; or 3. Current history of 1
or more years' inability to function outside a highly supportive living
arrangement, with an indication of continued need for such an arrangement.

simple, repetitive tasks.  To make this determination, the ALJ considered the medical evidence in the record[2], as well as the entirety of Plaintiff's symptoms and the extent to which the symptoms could be accepted as consistent with the objective medical evidence and other evidence in the record including Plaintiff's testimony.

In that regard, the ALJ noted that, at the hearing, Plaintiff testified that he suffered from the residuals of HIV and psychiatric problems, as well as fatigue and uncontrolled blood pressure.  Moreover, the ALJ considered Plaintiffs statements that he was anxious and tired and that was why he stopped working.  In addition, he considered Plaintiff's testimony that he stayed home and rested during the year he was out of work which enabled him to return to work in 2007.  After considering Plaintiff's testimony, the ALJ found that while Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with Plaintiff's RFC.   In making this finding, the ALJ relied on Dr. Mayer's report which expressly found that, "psychologically, [Plaintiff] appears able to work."  Tr. 133.  Moreover, Dr. Mayer  noted that Plaintiff lived independently, had a large social circle, traveled frequently and without difficulty, managed all of his finances and personal care and was able to drive without difficulty.  In addition,  the ALJ relied on reports from Plaintiff's visit to the Emergency Room which revealed no acute distress and found no evidence of a dangerous condition, as well as reports from Plaintiff's treating physicians including Dr. Lintz, Dr. Cohen and Dr. Klein, which noted that Plaintiff's HIV and hypertension were under control.

_____

[2]See infra Section C(1) with regards to the report of Dr. Gupta.

In addition, the ALJ considered the reports of Dr. Flaherty from Disability Determination Services, that, in relevant part, incorporated the psychiatric evaluation of Dr. Gupta.  In that regard, the ALJ noted that Dr. Flaherty found that Plaintiff retained the mental ability to understand, remember and follow instructions and complete tasks.  Tr. 16.

As a result of the evidence, the ALJ found that although Plaintiff alleged a mental impairment, he was never treated for his alleged psychiatric problems.  Moreover, the ALJ noted that although Plaintiff was diagnosed with an adjustment disorder, Dr. Mayer noted that Plaintiff suffered from no psychological condition that would limit his ability to perform work related activities.

In addition, with regard to Plaintiff's hypertension, the ALJ found that although Plaintiff's blood pressure had been slightly elevated at some point, the record demonstrated that Plaintiff's blood pressure was being controlled with medication.  Similarly, the ALJ noted that the record conclusively established that Plaintiff's HIV was controlled with medication and that the infection was undetectable.

Further, the ALJ determined that although Dr. Lintz found that Plaitniff was disabled as a result of chemical exposure in 2002, Dr. Lintz's opinion as to the severity of the symptoms was not supported by the record.  In that regard, the ALJ noted the absence of treatment records or laboratory results to support Dr. Lintz's conclusion and, therefore, the ALJ found that Dr. Lintz's conclusion regarding Plaintiff's disability was not persuasive and entitled to little weight.

Finally, the ALJ held that although Dr. Schneider determined that Plaintiff retained the RFC to perform light work, the ALJ specifically found that the record did not support such a limitation.  Instead, the ALJ noted that Plaintiff "has full daily living activities; his viral load is

11

undetectable and his hypertension is controlled.  There is no evidence that his depression causes

more than minimal impairment and he has never undergone psychiatric treatment.  The

claimant's allegations of severe and disabling conditions are not confirmed by the objective

medical evidence and are not credible." Tr. 17.  As a result, the ALJ determined that Plaintiff

was capable of performing at least medium work during the relevant period with the further

limitation that Plaintiff could perform simple, repetitive tasks.  Id.

Next, in light of Plaintiff's RFC, the ALJ determined at Step Four that Plaintiff was

unable to perform any past relevant work as a shipping container inspector because that work

was considered semi-skilled.  Moving to Step Five, the ALJ found that at the time of filing,

Plaintiff was a younger individual for purposes of disability insurance. The ALJ also found that

Plaintiff had at least a high school education and was able to communicate in English.  Finally,

the ALJ considered the Plaintiff's age, education, work experience and RFC, and found that there

were jobs that existed in significant numbers in the national economy that Plaintiff could have

performed between February 2, 2006 and April 1, 2007.  Specifically, the ALJ noted that in light

of his determination that Plaintiff could perform medium work with additional limitation of

being able to perform only unskilled medium work, a finding of "not disabled" was appropriate

pursuant to the medical-vocational grids.  Tr. 18.


## II. DISCUSSION

A.    Standard of Review

On a review of a final decision of the Commissioner of the Social Security

Administration, a district court "shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see

Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir.2001).  The Commissioner's decisions regarding

questions of fact are deemed conclusive on a reviewing court if supported by "substantial

evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000).

While the court must examine the record in its entirety for purposes of determining whether the

Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d

772, 776 (3d Cir.1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503

(3d Cir.2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less

than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004).  "It

means such relevant evidence as a reasonable mind might accept as adequate." Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir.1999).  A reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir.1992).  Accordingly, even if there is contrary evidence in the record that

would justify the opposite conclusion, the Commissioner's decision will be upheld if it is

supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986).


B.  Standard for Entitlement of Benefits

      Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the

statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate

the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).  Eligibility for supplemental security income requires the same showing of

disability.  42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

        The Act establishes a five-step sequential process for evaluation by the ALJ to determine

whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether

the claimant has shown that he is not currently engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5, 107 S.Ct. 2287, 96

L.Ed.2d 119 (1987). If a claimant is presently engaged in any form of substantial gainful activity,

he/she is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen,

482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe

impairment" or "combination of impairments" that significantly limits his physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n. 5.

Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20

C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not

have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186

F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the

impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P ., App. 1

14

(the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n. 5. If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

　　　　If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work.  20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141.  If the claimant is able to perform his previous work, the claimant is determined to not be disabled. 20 C.F.R. § § 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n. 5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's

15

impairments in determining whether the claimant is capable of performing work and not disabled. Id.

C.      Plaintiff's Arguments on Appeal

In the instant matter, Plaintiff claims that the ALJ erred by: (1) failing to provide an adequate evidentiary foundation for his determination that Plaintiff was able to perform unskilled medium work; and (2) relying solely on the Grids to determine that there was work in the national economy that Plaintiff could perform.

1. Determination of Residual Functional Capacity

Initially, Plaintiff argues that the ALJ did not provide an adequate evidentiary foundation to support his determination that Plaintiff could perform unskilled medium work.  In the underlying matter, after consideration of the entire record including Dr. Schneider's determination that Plaintiff retained the RFC for light work, the ALJ found "that the record does not support such limitations.  The claimant has full daily living activities; his viral load is undetectable and his hypertension is controlled.  There is no evidence that his depression causes more than minimal impairment and he has never undergone psychiatric treatment.  The claimant's allegations of severe and disabling conditions are not confirmed by the objective medical evidence and are not credible to the extent alleged.  Thus, the record supports a finding that the claimant is capable during the alleged closed period of at least medium work, with the performance of simple, repetitive tasks."  Tr. 17.

16

In making an RFC determination, an ALJ must discuss both the evidence that supports his conclusion and the evidence that was rejected.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir.2000); Cotter v. Harris, 642 F.2d 700, 705-07 (3d Cir.1981).  The ALJ did so here.  In this case, to make his RFC determination, the ALJ considered the evidence before him, including both the objective medical evidence and Plaintiff's own account of his limitations. (R. 24-27.)  Comparing the objective evidence with Plaintiff's subjective complaints of disabling anxiety and hypertension, he found that Plaintiff's statements "are not credible to the extent alleged." Tr. 17.  In keeping with the requirements of Cotter, the ALJ delineated the medical and other objective evidence in the record that supported his determination that Plaintiff was capable of medium work.  Such evidence included: the opinion of Plaintiff's treating physicians who found that his HIV load was undetectable and that his hypertension was controlled by medication; Plaintiff's failure to continue with ongoing treatment for his alleged mental impairments; Plaintiff's ability to perform daily activities including performance of all daily living activities, travel and interacting with his large social circle.  Moreover, the ALJ considered the findings of Dr. Mayer who opined that although Plaintiff was diagnosed with an adjustment disorder, he had no limitations with understanding and memory, sustained concentration and persistence, social interaction, or adaptation. Indeed, Dr. Mayer specifically found that, "psychologically, [Plaintiff] appears able to work."  Tr. 133.

Moreover, the ALJ expressly considered the listing requirement for HIV which requires a particular level of infection and determined that the record did not establish such a level of infection. Tr. 14.  Similarly, the ALJ expressly considered the listing for Affective Disorders which requires a particular combination of impairments and found that the record did "not

establish the requisite restriction of activities of daily living, difficulties in maintaining social functioning or concentration, persistence or pace or repeated episodes of decompensation as required in the B criteria." Tr. 14.  Moreover, the ALJ found that "the C criteria are not established by the evidence." Id.  Finally, the ALJ rejected the opinion of Dr. Lintz finding that Plaintiff was disabled as a result of chemical exposure in 2002 since such an opinion was not supported by treatment records or laboratory results.   As a result, the Court finds that substantial evidence in the record supports the ALJ's conclusion regarding Plaintiff's RFC.

Moreover, to the extent that Plaintiff argues that the ALJ erred by failing to address the report of Dr. Gupta and failed to heed the recommendation of the DDS that Plaintiff had the RFC to perform light work, the Court does not agree.  Initially, with regard to the report of Dr. Gupta, the Court notes that the report of Dr. Flaherty expressly incorporates Dr. Gupta's opinion.  Tr. 167.  Indeed, even after accounting for Dr. Gupta's findings, Dr. Flaherty found that Plaintiff was not markedly limited in any areas, was only moderately limited in six of twenty areas and was not significantly limited in 14 of 20 areas.  As a result, Dr. Flaherty found that Plaintiff "retain[ed] the mental ability to understand, remember and follow instructions and complete tasks." Moreover, nothing in Dr. Gupta's report would contradict Dr. Flaherty's conclusions.  Indeed, other than Dr. Gupta's conclusion that Plaintiff suffered from generalized anxiety disorder, Dr. Gupta made no findings with regard to Plaintiff's ability to work.  In light of the evidence in the record and the cumulative nature of Dr. Gupta's report, the ALJ's failure to specifically address Dr. Gupta's report does not violate the requirements of Cotter.

Similarly, to the extent that Plaintiff argues that the ALJ erred by determining that Plaintiff could perform unskilled medium work when Dr. Schneider found that Plaintiff retained

18

the RFC to perform light work, the Court does not agree.  Indeed, the ALJ expressly rejected Dr. Schneider's finding based on substantial evidence in the record that demonstrated that Plaintiff's physical ailments were under control.  In that regard, the record makes plain that Plaintiff's HIV was virtually undetectable and that his hypertension was easily controlled with medication. Moreover, as above, with respect to Plaintiff's mental impairments, nothing in the record suggests that Plaintiff was unable to work because of a psychological ailment.  In fact, the opposite is true.  Dr. Mayer's report specifically noted that, "psychologically, [Plaintiff] appears able to work."  Tr. 133.  Thus, the Court finds that the ALJ's decision that Plaintiff retained the RFC to perform medium work was based on substantial evidence in the record.

Finally, to the extent that Plaintiff argues that the record does not support the ALJ's decision to impose a further limitation on Plaintiff's RFC, i.e., that Plaintiff only retained the RFC to perform unskilled medium work, the Court does not agree.  For example, while Dr. Flaherty found that Plaintiff was not significantly limited in a number of areas including his ability to understand and remember short and simple instructions, he was moderately limited in the ability to understand, remember and carry out detailed instructions, as well as the ability to maintain attention for extended period of time.  Thus, the Court finds that the ALJ's limitation on Plaintiff's RFC is supported by substantial evidence in the record.  Tr. 169.

Because the ALJ detailed the evidence supporting his RFC determination and his reason for rejecting contrary evidence, the ALJ's decision was "accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704.  Accordingly, the ALJ's explanation of his RFC determination complied with the requirements of Cotter and Burnett.

19

2. <u>Reliance on the Medical-Vocational Grids</u>

Next, Plaintiff argues that because he demonstrated the existence of non-exertional impairments, the ALJ could not solely rely on the medical-vocational grids to establish the existence of jobs in the national economy that Plaintiff could perform.  The Court does not agree.

When evaluating a claimant with solely exertional limitations, an ALJ is permitted to rely on the medical-vocational grids to establish the existence of a significant number of jobs in the national economy.  <u>Heckler v. Campbell</u>, 461 U.S. 458, 467 (1983).  However, if an individual has non-exertional limitations, the ALJ cannot rely solely on the grids and is required to determine if the non-exertional impairments significantly erode the claimant's occupational base. <u>Sykes v. Apfel</u>, 228 F.3d 259, 269 (3d Cir.2000).  In making this determination about the effect of the non-exertional limitations on the claimant's ability to work, an ALJ is permitted to rely on an SSR or other rulemaking by the Social Security Commission.  <u>Allen v. Barnhart</u>, 417 F.3d 396, 406 (3d Cir.2005). In other words, the testimony of a vocational expert on the impact of non-exertional limitations is not always required.  However, this substitution of reliance on a Rule for an individualized determination as to the impact of those limitations is only permissible where there is a "'fit' between the facts of a given case, namely the specific nonexertional limitations, and the way in which the Rule dictates that such nonexertional limitations impact the base." <u>Id.</u>

Here, the ALJ cites to several SSRs in support of his finding that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled medium work."  Tr. 18. For example, in his decision, the ALJ references, in relevant part, SSR 85-15 which discusses the

consideration of a non-exertional mental impairment on the claimant's occupational base.

Specifically, SSR 85-15 provides,

> [w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15.

In the instant matter, as discussed above, the ALJ initially determined that Plaintiff retained the RFC to perform medium work.  However, the ALJ further limited Plaintiff's RFC to unskilled medium work based on evidence in the record, including the report of Dr. Flaherty which found that although Plaintiff was not significantly limited in a number of areas including his ability to understand and remember short and simple instructions, he was moderately limited in the ability to understand, remember and carry out detailed instructions, as well as the ability to maintain attention for extended period of time.   Thus, contrary to Plaintiff's suggestions, there appears to be a "fit" between Plaintiff's nonexertional limitations and the way in which SSR 85-15 dictates that such nonexertional limitations impact the occupation al base.   Specifically, the ALJ properly determined that Plaintiff was not limited in his ability to understand, carry out and remember simple instructions or to respond appropriately to supervision, coworkers and usual work situations, nor was he limited in his ability to deal with changes in the work setting.  Thus,

the Court finds that the ALJ's reliance on SSR 85-15 as an alternative to calling a vocational expert satisfied the requirements of <u>Allen v. Barnhart</u>, 417 F.3d 396 (3d Cir. 2005).


## III. CONCLUSION

For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff was not disabled.  Therefore, the ALJ's decision is affirmed in its entirety.


Dated: January 30, 2012                         /s/ Freda L. Wolfson_____

                                                Freda L. Wolfson, U.S.D.J.